# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TIMOTHY SHEARER | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | |
| SHIRLEY R. MOORE SMEAL; THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA; THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA | : | No. 11-5315 |

## MEMORANDUM

**JUDGE NORMA L. SHAPIRO**                                              February 27, 2013

      Timothy Shearer, a state prisoner, timely filed a habeas corpus petition under 28 U.S.C. § 2254. Shearer claims that his trial counsel provided ineffective assistance by: (1) failing to object to a witness's pretrial identification of Shearer in a photographic array; (2) failing to object to jury instructions that inadequately distinguished first-degree murder from third-degree murder; (3) failing to call an alibi witness; and (4) failing to object to the sufficiency of the evidence on an aggravated assault charge. Shearer also requests an evidentiary hearing.

      Magistrate Judge Timothy R. Rice recommended the petition be dismissed with prejudice. Shearer, proceeding *pro se*, has objected to all of Magistrate Judge Rice's conclusions. After considering Shearer's objections and his supplemental objections, the court finds petitioner's objections meritless. Magistrate Judge Rice's Report and Recommendation ("R&R") will be approved and adopted and Shearer's petition for habeas corpus will be denied.

I.   Background

On September 22, 1998, around 6:00 PM, Terrence Adams ("decedent") was shot and killed on the 5100 block of Arch Street. Yvette Gray was also shot in her right side but survived. Shearer was arrested for shooting decedent and Gray.

At Shearer's original trial in the Philadelphia Court of Common Pleas, defense counsel called Anthony Brown as a witness. Brown, Shearer's uncle, testified Shearer was at home with him on the night of the shooting. Brown also testified Shearer was on parole at the time of the shooting. Shearer's first trial was declared a mistrial when the jury could not reach a verdict.

At the retrial, Yvette Gray, Richard Adams (an eyewitness and decedent's second cousin), and John Fuller (an eyewitness) testified. Defense counsel did not call Brown to testify.

Gray testified she was near 51st and Arch Streets when she heard gunshots. Seeing others running, she joined with them. When she was shot in her right side, she fell on the steps of an abandoned house on the 5100 block of Arch Street. While lying there, she saw a man run by her in a red shirt. Shearer was wearing a red shirt the night of the shooting. Gray did not identify Shearer that night or at trial.

Richard Adams testified that Shearer and decedent argued two nights before the shooting. Adams said that on the night of the shooting, Shearer approached decedent on the corner of Paxon and Arch Streets. He said decedent told Shearer he did not want to fight, at which point Shearer fired a gun into the air. Adams, decedent, and others in the area began running down Arch and on to 51st Street. Adams said he looked back and saw Shearer chasing them and shooting his gun. Adams next saw decedent was shot and lying on the ground, with Shearer standing over him. Adams identified Shearer the night of the shooting in a police photographic

array and then again at trial. Adams testified he "got a nice little look" at Shearer on the night of the shooting. Trial Tr. 69–70, Sept. 8, 2000.

Fuller was visiting his mother on the 5100 block of Arch Street the night of the shooting. He heard gunshots and ran outside. Fuller testified he saw Shearer chasing people with a gun and a woman lying on a porch outside a house. He called the police when he heard others say the woman had been shot. Fuller said he recognized Shearer because Shearer went to school with his younger brother, and his mother and Shearer's mother were next-door neighbors. Fuller identified Shearer the night of the shooting and at trial.

Defense counsel did not call Brown or any other alibi witnesses at the retrial. On September 11, 2000, the second jury convicted Shearer of third-degree murder, a firearms violation, possession of an instrument of crime, and aggravated assault. The court sentenced Shearer to 17.5 to 35 years in prison. After the trial, Brown signed an affidavit stating he had been willing to testify at trial about Shearer's whereabouts the night of the shooting. *See* Resp. Pet. Ex. 5, at 38, paper no. 11.

Shearer, in his direct appeal, alleged ineffective assistance of counsel for failure to file a motion to suppress Adams' pre-trial identification and failure to call Brown as an alibi witness. The Superior Court deferred the ineffectiveness claims for collateral review and affirmed the conviction. Shearer's petition to the Pennsylvania Supreme Court for allowance of appeal was denied.

Shearer filed a *pro se* Pennsylvania Post Conviction Relief Act ("PCRA") petition. *See* 42 Pa. Cons. Stat. Ann. §§ 9542–9546. He claimed ineffective assistance of counsel for failure to file a motion to suppress Adams' pre-trial identification and failure to call Brown as an alibi witness. The PCRA court appointed counsel for Shearer. After an amended petition and an

evidentiary hearing, the PCRA court ordered appointed counsel to file another amended petition, consolidating Shearer's grievances. Shearer filed a new PCRA petition, claiming ineffective assistance of trial counsel based on counsel's: (1) advising Shearer not to testify; (2) failing to file a motion to suppress Adams' pre-trial identification; and (3) failing to call Brown or any other alibi witnesses. This petition was dismissed as meritless.

Shearer appealed; the PCRA court allowed him to proceed *pro se*.[1] The Superior Court found all claims meritless and affirmed the PCRA court. The Pennsylvania Supreme Court denied Shearer's petition for allowance of appeal. Shearer filed a timely habeas corpus petition on August 18, 2011.

**II.     Standard of Review**

A district court reviews *de novo* the portions of a magistrate judge's Report and Recommendation to which a petitioner objects. *See* 28 U.S.C. § 636(b)(1)(c).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a district court may not grant a writ of habeas corpus to a person serving a state court sentence unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law."

---

[1] On appeal, Shearer also claimed PCRA counsel was ineffective. Judge Rice did not address effectiveness of Shearer's PCRA counsel because he found trial counsel was effective. R&R at 14 n.9 (paper no. 17); *see Real v. Shannon*, 600 F.3d 302, 309 (3d Cir. 2010). The court will do the same.

*Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court applied an appropriate legal rule in an objectively unreasonable manner. *See Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002); *Williams*, 529 U.S. at 407–08.

To grant a writ of habeas corpus, the federal court must find that the state court was objectively unreasonable in making its decision. *See Williams*, 529 U.S. at 411. A federal court cannot grant a writ because it would have reached a different result than the state court. *See, e.g.*, *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999). State court findings of fact are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. Discussion

#### A. The Ineffective Assistance of Counsel Claims

To establish an ineffective assistance of counsel claim, a petitioner must show: (1) counsel's conduct was so deficient that defendant was denied his Sixth Amendment right to counsel; and (2) the deficient conduct prejudiced defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Outten v. Kearney*, 464 F.3d 401, 414 (3d Cir. 2006). The *Strickland* standard is highly deferential to counsel and requires the reviewing court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Shearer claims his trial counsel was ineffective for failing to: (1) object to the admission of Adams' pre-trial identification; (2) object to jury instructions on the murder charge; (3) call Brown or others as alibi witnesses; and (4) object to the sufficiency of the evidence on the aggravated assault charge.

5

### i. Trial Counsel's Failure to Object to Adams' Pre-trial Identification

Magistrate Judge Rice found that defense counsel's failure to object to Adams' pre-trial identification did not unfairly prejudice Shearer. Shearer claims the photographic array shown to Adams the night of the shooting was impermissibly suggestive. Shearer contends his counsel's failure to object to admission of the impermissibly suggestive pre-trial identification prejudiced him and was ineffective assistance of counsel.

Shearer contends that trial counsel's failure to move to suppress the pre-trial identification was not based on any motivating strategy and that the state court "manufacture[d] a strategic reason in the absence of actual testimony by trial counsel himself." Objections to R&R, at 4. Shearer's argument presumes a motion to suppress the pre-trial identification would have been successful and would have changed the outcome of his case. If a motion to suppress would have been meritless, trial counsel's failure to file the motion could not be deficient representation or cause prejudice to the defendant. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.").

Due process requires that an identification from a photographic array be suppressed if the "identification procedure is so suggestive that it undermines the reliability of the resulting identification." *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003). In evaluating an array, a court is to "examine the totality of the circumstances to determine whether the array's suggestiveness denied the defendant due process." *Id.* The admission of a pre-trial identification will also violate due process if the police emphasize the photograph of a particular suspect. *Id.*

The photographic array shown to Adams and Adams' identification do not suffer from any of these defects.

Shearer has a pink lower lip; he is the only African-American man in the photographic array with this notable feature. The PCRA court said the array was not suggestive as the pictures were blurred and this distinctive mark was barely noticeable. Adams, who was familiar with Shearer, said he "got a nice little look" at Shearer the night of the shooting (Trial Tr. at 69–70, Sept. 8, 2000), and did not state he relied on the distinctive pink lip to identify Shearer in the photographic array.[2] The photographic array was not impermissibly suggestive; Adams' identification from the photographic array was not unreliable. A motion to suppress the pre-trial identification would likely have failed.

Even if the photographic array were impermissibly suggestive, Adams was still able to identify Shearer in court.[3] Shearer does not claim ineffective assistance of counsel for failing to object to Adams' in-court identification of Shearer. There was not a substantial risk that a suggestive photographic array would result in a later in-court misidentification because Adams was familiar with Shearer prior to the shooting. Suppression of Adams' pre-trial identification would have had little effect when Adams, an eyewitness, made an identification at trial.

Shearer cannot demonstrate that his counsel's failure to file a motion to suppress Adams' pretrial identification resulted in any prejudice to Shearer because that motion likely would have been denied. The state court's decision rejecting Shearer's ineffective assistance of counsel

---

[2] In his objections, Shearer contends the pre-trial identification was not reliable because at the time, Adams was supposedly high on marijuana and phencyclidine (commonly known as "PCP"). The jury heard expert testimony that the intoxication could result in hallucinations, but credited Adams' identifications.

[3] Shearer, attempting to further discredit Adams' identifications, points to two additional prosecution witnesses whose testimony contradicted Adams. Shearer fails to show why the jury's weighing of the contradictory testimony should be invalidated.

claim on this basis was not contrary to, nor an unreasonable application of, *Strickland*. Magistrate Judge Rice's recommendation to deny this claim will be approved and adopted.

### ii. Trial Counsel's Failure to Object to Jury Instructions

Magistrate Judge Rice found the jury instructions on the third-degree murder charge were appropriate. Shearer contends that his counsel's performance was deficient because counsel did not ask the court to instruct the jury that the element of malice for third-degree murder does not necessarily involve intent to kill. Shearer claims the instructions did not sufficiently distinguish first-degree murder from third-degree murder, and did not give the jury the proper range of options. He claims a proper instruction would have resulted in a different outcome at trial.

The court's instruction to which Shearer objects was:

> I am now going to tell you the difference between first[-]degree murder and third[-]degree murder.
> First[-]degree murder, the defendant must have the specific intent to kill and malice, two things. That's why I defined specific intent for you. So, it's specific intent and malice.
> Third[-]degree murder is a killing with malice only. That's it in a nutshell. That's essentially the difference between those two definitions.
> Since malice is an element of third[-]degree murder, the word, malice, as I am using it, has a special legal meaning. It doesn't simply mean hatred, spite or ill will. Malice is a shorthand way of referring to *any of three* different mental states that the law regards as being bad enough to make a killing murder.
> Thus, a killing is with malice if the killer acts with, first, *an intent to kill or*, second, with an intent to inflict serious bodily injury or, third, with a wickedness of disposition, a hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty indicating an unjustified disregard that the possibility of death or great bodily injury might result and an extreme indifference to the value of human life.

Trial Tr. 33-34, Sept. 11, 2000 (emphasis added).

The Pennsylvania Superior Court on appeal from the PCRA order held that the trial court's instruction was proper under Pennsylvania law. "It is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

If a jury instruction is contrary to the law and prejudices the defendant, trial counsel's failure to object will constitute ineffective assistance. *Gov't of V.I. v. Rosa*, 399 F.3d 283, 295 (3d Cir. 2005). The third-degree murder instruction was consistent with Pennsylvania law and was comparable to jury instructions previously upheld in the state courts. *See Commonwealth v. Thomas*, 717 A.2d 468, 479–80 (Pa. 1998). The trial court properly instructed the jury that first-degree murder requires that a defendant have intent to kill and malice, but third-degree murder requires only malice. Because the instruction is consistent with the law, defense counsel's performance was not deficient. But even if the instruction were incorrect, the mistake did not prejudice the defendant. Defendant was not convicted of first degree murder but was convicted of the lesser offense of third degree murder.

Trial counsel's objection to the jury instructions would have been futile. The state court's decision rejecting this ineffective assistance of counsel claim was not objectively unreasonable. Magistrate Judge Rice's recommendation to deny this claim will be approved and adopted.

### iii. Trial Counsel's Failure to Call Anthony Brown as an Alibi Witness

Shearer contends counsel was ineffective for failing to call Brown as an alibi witness on retrial. At defendant's original trial, Brown testified Shearer was at home with him the night of the shooting. Brown also revealed during his testimony at the first trial that Shearer was on parole at the time of the shooting, a fact harmful to the defendant. To prevent Brown, who was a

poor witness in the opinion of defense counsel, from revealing Shearer's parole status again, counsel chose not to call Brown to testify on retrial.

Trial counsel's decision not to call Brown was a reasonable strategic choice. Prejudice may result when a defendant's criminal history is revealed at trial. Trial counsel's strategic decision cannot be second-guessed on habeas review. *Strickland*, 466 U.S. at 690. Trial counsel testified at the evidentiary hearing that he discussed the issue with Shearer and trial counsel colloquied Shearer on the decision not to call Brown as an alibi witness during the second trial. Trial Tr. 3-4, Sept. 11, 2000. Because trial counsel's decision not to call Brown to testify was a reasonable trial strategy and defendant understood and agreed to that strategy on the record, the state courts were not unreasonable in rejecting Shearer's *Strickland* claim. Magistrate Judge Rice's recommendation to deny this claim will be approved and adopted.

### iv. Trial Counsel's Failure to Object to the Sufficiency of the Evidence on the Aggravated Assault Charge

Shearer contends that his counsel was ineffective for failing to object to the sufficiency of the evidence on the aggravated assault charge. The state court denied Shearer's claim because it found that even if counsel had challenged the sufficiency of the evidence, the challenge would have been denied.

The state court properly concluded that there was sufficient evidence to convict Shearer of aggravated assault on Gray. Evidence is sufficient if "the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The reviewing court must ask if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The prosecution does not need "to rule out every hypothesis except that of guilt." *Id.* at 326; *Holland v. United States*, 348 U.S.

10

121, 140 (1954). Evidence that is primarily based on a single witness's testimony and is entirely circumstantial can be sufficient to establish guilt. *See Sullivan v. Cuyler*, 723 F.2d 1077, 1084 (3d Cir. 1983).

The evidence at Shearer's trial exceeded this low threshold. Multiple witnesses who were personally familiar with Shearer identified him as the shooter; others specified characteristics of the shooter consistent with Shearer. Gray's location at the time of the shooting and her observations once she was shot combine with other testimony to support a finding of guilt.

Shearer claims Gray was an unreliable witness because of her injury at the time of her observations, and that her identification of a man who ran by in a red shirt could have been someone other than Shearer. Shearer also states there was no ballistics evidence connecting Shearer to Gray's wound. Nevertheless, there was circumstantial evidence sufficient to support the jury's finding. The court cannot grant a writ because it might have reached a different result. *Matteo*, 171 F.3d at 899.

The state court was not unreasonable in denying Shearer's *Strickland* claim on this ground. Magistrate Judge Rice's recommendation to deny this claim will be approved and adopted.

### B.  Request for an Evidentiary Hearing

Shearer requests an evidentiary hearing on his habeas petition. An evidentiary hearing may be granted only if the petitioner meets certain requirements of AEDPA and an evidentiary hearing would be meaningful. 28 U.S.C. 2254(e)(2); *Goldblum v. Klem*, 510 F.3d 204, 220–21 (3d Cir. 2007); *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000). The petitioner must show that evidence not already in the record would support his case. *Goldblum*, 510 F.3d at 220.

An evidentiary hearing is not necessary if issues can be resolved through reference to the state court record. *Id.*

Magistrate Judge Rice found an evidentiary hearing unnecessary because the Pennsylvania courts adequately addressed Shearer's claims. The trial court evaluated the evidence on the record, and the PCRA court heard testimony relevant to the ineffective assistance claims. Shearer points to no information or facts not already of record.

Shearer does point to a variety of facts he wishes were given greater weight at his trial, but the jury weighed the evidence and did not find in Shearer's favor. Shearer does not present any information the trial court and state appellate court did not consider that would have resulted in a different outcome. Shearer has not demonstrated how an evidentiary hearing would advance his claims. Magistrate Judge Rice's recommendation to deny the request for an evidentiary hearing will be approved and adopted.

### III.  Conclusion

None of Shearer's contentions meet the burden for establishing ineffective assistance of counsel. Counsel's conduct and strategy were within professional standards. Shearer has also failed to show he was prejudiced by counsel's performance. The state court application of federal law was not unreasonable or contrary to established Supreme Court precedent. Magistrate Judge Rice's Report and Recommendation will be approved and adopted. An appropriate order follows.